**Affirm and Opinion Filed October 7, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00400-CV

## SCOTT + REID GENERAL CONTRACTORS, INC., Appellant
## V.
## SAM STANTON AND HEATHER STANTON, Appellees

**On Appeal from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-05704-A**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Myers

Scott + Reid General Contractors, Inc. appeals the trial court's order denying its motion to compel arbitration. Appellant brings two issues contending the trial court's denial of the motion was an abuse of discretion. We affirm the trial court's order.

## BACKGROUND

Sam Stanton and Heather Stanton own a house. Behind the house is a commercial center. The property directly behind their property was undergoing construction of the Bellomy Office building owned and operated by 4415 W Lovers Lane, LLC and various entities using the name "Bellomy."

Appellant was the general contractor for the construction project. The general contract between appellant and 4415 stated appellant would "take reasonable precautions for the safety of, and shall provide reasonable protection to prevent damage, injury or loss to . . . other property at the site or adjacent thereto . . . ." The general contract did not contain an arbitration provision but instead provided that disputes between 4415 and appellant would be resolved first by mediation with the architect, and if that was unsuccessful, then by "Litigation in a court of competent jurisdiction."

The construction project required excavation for a parking garage. The excavator for the project was A&J Bobcat Service LLC. Appellant's subcontract with A&J provided that any disputes between appellant and A&J that could not be resolved by other described means "shall be submitted to arbitration . . . conducted in accordance with the Construction Industry Dispute Resolution Procedures . . . as set forth by the American Arbitration Association."

The Stantons alleged their property was damaged by the excavation. They sued appellant, A&J, 4415, and two Bellomy entities. The Stantons' claims included breach of contract against appellant. Although the Stantons did not have a contract with appellant, they alleged they were third-party beneficiaries of the general contract because their property bordered the construction site and appellant promised in the general contract that it would "provide reasonable protection to prevent damage, injury or loss to . . . other property at the site or adjacent thereto." They

alleged appellant breached the contract by failing to prevent damage and by failing to repair the damage to their property caused by the excavation.

The Stantons also alleged that "[t]o the extent that S + R [appellant] contracted with A+J [sic] to perform work under the Contractor Agreement, then the Stantons are also third-party beneficiaries of such agreement." They alleged that to the extent A&J performed work at appellant's direction and the work damaged the Stantons' property, appellant and A&J breached their obligations under the general contract "and/or any related agreement" between appellant and A&J to remedy the damage.

Appellant moved to compel arbitration of the Stantons' claims. Appellant argued that the Stantons, by alleging they were third-party beneficiaries of the subcontract with A&J, were subject to the arbitration provision in that subcontract for any claim of damages resulting from the alleged breach of the subcontract. The Stantons presented evidence that A&J did not perform the excavation work under the subcontract with appellant but under a separate contract directly with 4415 and the Bellomy entities. The Stantons argued that because the excavation work was not performed pursuant to appellant's subcontract with A&J, the condition under which the Stantons alleged to be third-party beneficiaries to the subcontract was not met, and the arbitration clause in the subcontract did not apply to the Stantons.

The trial court denied appellant's motion to compel arbitration. Appellant brings this interlocutory appeal of that order. *See* TEX. CIV. PRAC. & REM. CODE

ANN. § 51.016 (appeal of order denying motion to compel arbitration under Federal Arbitration Act); *id.* § 171.098(a)(1) (appeal of order denying motion to compel arbitration under Texas Arbitration Act).

## REVIEW OF MOTION TO COMPEL ARBITRATION

In its first issue, appellant contends the trial court erred by denying the motion to compel arbitration. Appellant asserts it established the existence of a valid and mandatory arbitration agreement encompassing the Stantons' claims and that the Stantons did not prove a defense to the enforcement of the arbitration provision.

We review the denial of a motion to compel arbitration for an abuse of discretion, deferring to the trial court on factual determinations that are supported by the evidence and reviewing legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). The trial court did not issue findings of fact or conclusions of law to explain its denial of the motion to compel arbitration. We must, therefore, uphold the trial court's decision on any appropriate legal theory urged below. *Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.).

The first question is whether appellant proved the existence of an arbitration agreement applicable to the parties. Appellant argues it proved the existence of the arbitration agreement. Appellant states in its brief that the Stantons admitted at the hearing on the motion to compel arbitration that the A&J subcontract with its arbitration provision existed and that it applied to them. Appellant quotes the

–4–

Stantons' attorney, Mr. Minter, from the hearing to compel arbitration, and appellant asserts Mr. Minter admitted the existence of an arbitration agreement between the parties:

> Mr. Minter: . . . [W]e pled that to the extent that S+R contracted with A&J to perform work under the contractor agreement, then the Stantons are also third-party beneficiaries. But what this turns on is not that there was a contract between S+R, which was the general contractor for the property, and A&J, who was hired to do the excavation work. *There was such a contract.*

(Emphasis added by appellant.) However, appellant does not quote what Mr. Minter said next:

> What is not being said here and what I'm getting ready to say and I guess I'll say in my response is that that contract as to the performance of A&J to do the excavation no longer existed when A&J did the excavation. At least, it did not exist under those terms. The testimony of Mr. Hoagland, S + R's corporate representative, and the testimony of Mr. Jones, A&J's representative, clearly point to the fact that there's something going on in that suddenly S + R was told before the excavation started by the 4415 or Bellomy Group or whatever you want to call them was told get off the project. Then A&J contracted directly with the 4415 to do the excavation. And then Mr. Jones testifies—it is before this Court—that he then—there were change orders that modified the contract between S + R and A&J to the point that he was no longer to do the excavation under the original S + R and A&J contract. So to say that when we put this in here, to the extent that he performed work, he did not perform the excavation work, the work that caused the damage that we're complaining of under the S + R and A&J contract. He performed it under the new contract between 4415 and A&J and even modified the old contract, the subcontract, with S + R and A&J where that work was taken out. And that was his testimony. That's what this hangs on, Your Honor. When we say—and our position is, based upon that, we're not subject to the arbitration clause of the subcontract between S + R and A&J.

As Mr. Minter told the trial court, the Stantons presented deposition testimony in support of their assertion that A&J's excavation work was not performed pursuant to a contract between appellant and A&J. Charles Hoagland, appellant's corporate representative, testified that appellant was removed from the construction project for a period of time and then brought back. When appellant returned to the project, it discovered the excavation had been performed while it was off the project. Hoagland testified the excavation was not performed under appellant's supervision. Dan Jones, A&J's corporate representative, testified A&J performed the excavation pursuant to a contract with the Bellomy Group. Jones testified that A&J notified appellant that A&J had entered into a contract with the Bellomy Group for the excavation. Jones said appellant and A&J then changed the scope of the subcontract to remove the excavation work.

The trial court could interpret the Stantons' breach of contract claim as pleading they were third-party beneficiaries of any contract between appellant and A&J on the condition that the contract was for the work performed by A&J that the Stantons alleged damaged them. The trial court could also conclude the Stantons disproved the existence of the condition, and thus disproved their third-party-beneficiary status, by proving that A&J's performance of the excavation work was not pursuant to a contract between appellant and A&J but was performed under a separate contract with the Bellomy entities. The trial court did not abuse its discretion by determining the Stantons were not third-party beneficiaries of the

–6–

subcontract between appellant and A&J, and the Stantons were not subject to the subcontract's arbitration provision.

Appellant also argues the Stantons failed to prove their defenses to application of the arbitration provision, including waiver through litigation conduct. However, because we conclude appellant failed to prove any arbitration provision applied to the Stantons, we need not consider whether they proved a defense to the application of the provision. We overrule appellant's first issue.

In its second issue, appellant contends the trial court erred by not ordering the parties to arbitrate the applicability of the arbitration provision. Generally, a court, rather than an arbitrator, determines matters of arbitrability. *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied). These "gateway matters" include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate. *Id.* Parties can, however, agree to arbitrate arbitrability. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). We presume the parties intended for the court to determine arbitrability unless "clear and unmistakable" evidence demonstrates the parties' intent to submit that matter to arbitration. *Id.*

Appellant and A&J agreed that arbitration would be "submitted to arbitration "conducted in accordance with the Construction Industry Dispute Resolution Procedures . . . as set forth by the American Arbitration Association." The AAA Construction Industry Arbitration Rules provide the arbitrator has the power "to rule

–7–

on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "to determine the existence or validity of a contract of which an arbitration clause forms a part." *See* American Arbitration Association, Construction Industry Arbitration Rules & and Mediation Procedures, Rule 9(a), (b), available at https://www.adr.org/sites/default/files/Construction_Rules_Web.pdf (last visited Oct. 7, 2022). "This Court, and many others, have held that a bilateral agreement to arbitrate under the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator." *Holifield v. Barclay Props., Ltd.*, No. 05-21-00239-CV, 2021 WL 4549498, at *3 (Tex. App.—Dallas Oct. 5, 2021 pet. filed) (mem. op.). The subcontract between appellant and A&J, however, is not a bilateral contract with the Stantons. The Stantons did not sign the subcontract. The supreme court has held that a contract's incorporation of the AAA rules is not clear and unmistakable evidence that a nonsignatory to the contract intended to arbitrate arbitrability. *See Jody James Farms*, 547 S.W.3d at 632. Instead, the contract shows only that the signatories agreed to have the arbitrator determine arbitrability of disputes between one another, not third parties. *See id.* at 632–33.

Because there was no clear and unmistakable evidence that appellant and A&J agreed to arbitrate arbitrability with a third party or that the Stantons agreed to arbitrate arbitrability, the trial court could not compel appellant and the Stantons to

arbitrate before determining that an agreement to arbitrate applied to them. Therefore, the trial court, and not the arbitrator, had to determine whether the Stantons' claims were subject to arbitration under the arbitration provision of the subcontract. *See id.* at 633.

We conclude the trial court did not abuse its discretion by determining whether an arbitration agreement was applicable to the Stantons' dispute with appellant. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers//

220400f.p05

LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SCOTT + REID GENERAL
CONTRACTORS, INC., Appellant

No. 05-22-00400-CV     V.

SAM STANTON AND HEATHER
STANTON, Appellees

On Appeal from the County Court at
Law No. 1, Dallas County, Texas
Trial Court Cause No. CC-17-05704-
A.
Opinion delivered by Justice Myers.
Justices Pedersen, III and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SAM STANTON AND HEATHER STANTON recover their costs of this appeal from appellant SCOTT + REID GENERAL CONTRACTORS, INC.

Judgment entered this 7th day of October, 2022.